| | |
|---|---|
| ZACHARY CARTER<br>Corporation Counsel, City of New York<br>Attorney for City of New York<br>Of Counsel: Hugh H. Shull III (HS-0236)<br>100 Church Street, Room 5-233<br>New York, New York 10007<br>(212) 356-2138 | Hearing Date and Time:<br>12/8/2016 @ 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

FIA 164 HOLDINGS, LLC,

               Debtor.
-------------------------------------------------------X

Chapter 11

Case No. 16-20006

**MOTION OF THE CITY OF NEW YORK FOR ANNULMENT OF THE AUTOMATIC STAY, TO THE EXTENT IT APPLIED, *NUNC PRO TUNC*, AS OF OCTOBER 13, 2016**

        The City of New York (the "City"), by its attorney ZACHARY CARTER, Corporation Counsel of the City of New York, as and for its motion for an order (i) granting an annulment of the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), to the extent it applied, *nunc pro tunc* to October 13, 2016, to retroactively permit the City's closing of transfer of title to real property known as and located at 438-440 West 164th Street (the "Property"), pursuant to an in rem real property tax lien foreclosure judgment, which transfer occurred on October 14, 2016, or (ii) determining that the stay did not apply to the transfer, respectfully states as follows:

**I. Preliminary Statement**

        1.    FIA 164 Holdings, LLC (the "Debtor") does not own the Real Property and therefore the automatic stay does not apply to the City's foreclosure transfer. The real property was owned by 440 West 164th Street Housing Development Fund Corporation (the "440 West"), which had filed its own bankruptcy case in 2015. FIA is an alleged shareholder in 440

West (subject to dispute).  The City held a pre-petition in rem real property tax lien foreclosure judgment and the redemption period had expired.  The Court entered an order granting the City stay relief in the 440 West bankruptcy dated August 1, 2016 (the "Stay Relief Order" Exhibit A).  On October 14, 2016, the City closed on a transfer of title to the Property to Neighborhood Restore Housing Development Fund Corporation ("NR") under the City's Department of Housing Preservation and Development's ("HPD") third party transfer program.  A copy of the deed to NR is annexed hereto as Exhibit "B".

2.    On October 16, 2016, a Sunday, 2 days after the transfer of title to NR, the Debtor's counsel forwarded an e-mail to the undersigned Assistant Corporation Counsel with a link to the ECF notice of the section 341 meeting in the Debtor's case, which was dated October 14, 2016.  Neither the e-mail nor the notice mentioned a filing date but apparently the Debtor had filed on October 13, 2016 in the Manhattan Division and the case was transferred to the White Plains Division.

3.    The undersigned corresponded with and discussed the Debtor's filing with Debtor's counsel, advising them of the transfer of title.  Debtor's counsel asserted that the transfer was a nullity because it violated the stay in the Debtor's bankruptcy.  The City asserts that the transfer was not stayed under section 362(a) of the Bankruptcy Code since FIA didn't own the Property and the foreclosure didn't seek any in personam claim against the Debtor.

4.    Closing of the foreclosure transfer operates to terminate the tenure of the Real Property Action and Proceedings Law 7A administrator, who had been appointed by the housing court to administer the Property.  The 7A is excused from turnover and the stay under the public policy exception under 362(b)(4) of the Bankruptcy Code and she had continued to operate the Property during the 440 West bankruptcy case.  But now NR is the owner and is

2

responsible for the Property under all applicable laws and under a regulatory agreement with HPD.

5. Out of perhaps an abundance of caution, but in light of the confusion Debtor's assertions of the applicability of the stay adds to the transitioning of management responsibilities from the 7A administrator to NR and its managing agent, including determining occupancies, tenancy, rent roll and/or maintenance requirements, the City proposed to the Debtor's counsel that the City make this motion, to annul the stay retroactively to the extent it applies at all. The City further proposed to Debtor's counsel that in the interim pending determination of this motion, NR continue to maintain the property and determine valid tenancies, and collect rent if appropriate from all tenants, aside from those occupying units in which the Debtor alleges an interest pending a determination of this motion, or any motion NR may make to enforce its rights. NR advises that it believes that sub-tenants of the Debtor currently occupy those units. Debtor's counsel hasn't responded to that proposal, made a week ago, although it has been discussed and the City believes the general feeling is that the Property needs to be maintained in the interim.

6. The City submits that stay relief, to the extent required, should be granted for the same reasons the Court gave in granting stay relief in the 440 West case, citing numerous cases in the United States Bankruptcy Court for the Southern and Eastern District of New York. The redemption period under the foreclosure statute has expired under the foreclosure statute. This was grounds to grant stay relief in the owner's bankruptcy, the owner having lost all but a possessory interest in the property, and surely is sufficient grounds to grant stay relief in a shareholder's bankruptcy if the stay even applies.

**II. Background**

**The Subject Property**

7. 440 West is an HDFC organized under Article XI of the PHFL, §573, pursuant to a certificate of incorporation dated February 25, 1982. By deed dated December 28, 1982 the City transferred title to the Property, Block 2110, Lot 76 in the Borough of Manhattan, to 440 West, for $5,250.00, an equivalent of $250 a unit, in accordance with the PHFL and the City's affordable housing goals and policies.

8. HDFCs are created pursuant to Article XI of the PHFL. Article XI was enacted by the state legislature to create and rehabilitate affordable housing and to facilitate participation in federal and state housing programs.

9. HDFCs are incorporated pursuant to "either (a) the business corporation law, (b) the not-for-profit corporation law, or (c) the not-for-profit corporation law and article two of this chapter." See Article XI PHFL § 573.

10. Pursuant to Section 573(3)(a), Article XI of the PHFL, HDFCs must be used "exclusively to develop a housing project for persons of low income." Moreover, "all income and earnings of the corporation shall be used exclusively for corporate purposes, and . . . no part of the net income or net earnings of the corporation shall inure to the benefit or profit of any private individual, firm, corporation or association." See Article XI PHFL § 573(3)(b).

11. 440 West was organized as a cooperative. The property owned by an HDFC is solely for the purpose of providing low income housing. If organized as a business corporation, the certificate of incorporation shall "provide that each housing project of such corporation shall be operated exclusively for the benefit of the persons or families who are

4

entitled to occupancy in such housing project by virtue of their ownership of shares in such corporation…" PHFL §573(4).

12. The Property had been in tax delinquency for over 20 years, with no property charges or payments made since the year 2000 (when some frontage charges were paid), other than a $13.00 regulatory fee paid in 2014, when the Property was being run by the 7A Administrator. There were past due taxes or charges dating back to 1988 and no real property taxes have been paid since the early 1990s. As of March of 2016, property taxes and charges were approximately $1.7 million.

13. HPD commenced an action under article 7A of the RPAPL on June 4, 2012 in the Civil Court of the City of New York, County of New York, Housing Part B (the "Civil Court"), Index No. 13180/12 (the "7A Proceeding"). There was no cooking gas being supplied to any of the apartments in addition to numerous other conditions requiring repair. t the Property. By decision and order dated February 14, 2014 the Civil Court found that conditions existed warranting the appointment of a 7A Administrator. By Order and Judgment dated February 28, 2014, Gloria Hopson was appointed as 7A Administrator, to, inter alia, collect the rents and maintenance and to use such rents to remedy conditions alleged in the petition and to undertake work authorized by the RPAPL.

### The *In Rem* Tax Foreclosure Action

14. To maintain the Property as an affordable housing project, address serious housing code violations, and to stop the Debtor's pattern of tax delinquency, HPD elected to transfer the Premises to a responsible owner, through its Third Party Transfer Program (the "Program"), a program jointly administered by HPD and DOF, by including the Property in an *in*

5

*rem* foreclosure action. Pursuant to relevant statute, the City has authority to foreclose on properties affected by tax liens which remained unpaid for the statutorily required period.

15. In brief, as a result of delinquent taxes, the Property was included in *In Rem Tax Foreclosure Action No. 42, Borough of Manhattan* (Sup. Ct. NY Co. Index No. 580001/00) (the "Foreclosure Action") under the in rem tax lien foreclosure laws of § 11-401 et seq. of the Administrative Code of the City of New York ("Admin. Code"), and specifically, § 11-412.1. An answer was filed.

16. The City moved for summary judgment and on December 2, 2014, a Judgment of Foreclosure was entered in the Foreclosure Action.

### The Mandatory Redemption Period

17. Under Admin Code § 11-412.1(d), a property owner or a party in interest has four months after the entry of a foreclosure judgment to repay the tax debt on a tax delinquent parcel in order to redeem the property from foreclosure. This four-month period is known as the "mandatory redemption period." Pursuant to Admin. Code §§ 11-407 and 11-412.1(d), the Debtor could have redeemed the subject property during the mandatory redemption period by paying the delinquent taxes in full or entering into an installment agreement (with DOF, upon approval by HPD) to pay the taxes over time.

18. The mandatory redemption period during which 440 West had a right to redeem the Property expired on April 2, 2015, four months after the date of entry of the Foreclosure Judgment. Under §108(b) of the Bankruptcy Code and case law, at best, the right to redeem the property from the Foreclosure Judgment expired on June 1, 2015.

19. Following entry of foreclosure judgment and the elapse of the four (4) month mandatory redemption period, the City has four (4) months transfer the property, plus a 45 day toll for review by the City Council. Admin. Code §§ 11-412.1(c); 11-412.2.

### The Third Party Transfer Program

20. The Third Party Transfer Program (the "TPT Program") is intended to remedy the problem of tax delinquent, distressed residential properties in New York City. The policy and goal of the legislation is to encourage prompt payment of tax arrears, and if the arrears are not paid, to transfer these buildings quickly to new owners who have the expertise to address problems and to complete prompt rehabilitation as appropriate. The TPT Program's mission is to rehabilitate and improve buildings, maintain their affordability and protect existing tenants or residents from displacement.

21. Proposed third-party transferees under the TPT Program must be deemed qualified pursuant to criteria and processes established by HPD. See Admin. Code Section 11-412.1(b); see generally Title 28 R.C.N.Y. Section 8-03 et seq. HPD selects new owners/developers through a "Request for Qualifications ("RFQ") process. Proposed new owners must also demonstrate that they have, among other qualifications, residential management experience, experience in rehabilitation of occupied residential property, financial capacity, and capability to carry out the necessary work. Applicants to the RFQ are required to submit descriptions of their qualifications to acquire, rehabilitate, and manage tax foreclosed, privately-owned, distressed residential properties.

22. Under the TPT Program buildings can move out of tax delinquency and be restored under responsible new ownership, to the benefit of tenants and the neighborhood.

23. The ultimate third-party transferee will be a developer selected by HPD, pursuant to its rigorous RFQ process, and subject to review by the City Council. Admin. Code § 11-412.2. In any event, as is the case with the overwhelming majority of transfers in the TPT Program, the Property is transferred to NR as interim owner. NR is a non-profit entity with a proven track record in managing properties prior to the transfer to the ultimate third party. NR, as interim owner, will perform any immediately necessary repairs to the Property, assist tenants with lease issues and work with the ultimate new owner for a smooth transition. The new owner identifies any rehabilitation needs and obtains a loan facilitated by HPD to repair the Property. The Property remains affordable housing.

24. There is no auction sale of the properties in modified in rem tax foreclosures under § 11-412.1 of the Admin Code (however, an owner can allege in defense substantial equity in property and be request an extension of six months from the date an answer was due to sell the property being foreclosed and pay the taxes owed under 11-409(d) of the Admin Code; 440 West did not assert this in its answer). The tax liens and charges are eliminated upon transfer to the qualified third-party transferee. § 11-412.1(c) of the Admin. Code. In this way the burden of servicing the delinquent taxes does not encumber the properties and enables the cash flow to be utilized to rehabilitate the properties if necessary and maintain the properties, and the third party transferee won't be burdened by servicing such debt.

25. 440 West could not maintain the Property. The City has been paying for heat and hot water and making emergency repairs. HPD has been paying thousands of dollars just for the monthly Con Ed gas bill. The Debtor, FIA Holdings, did not pay maintenance to the 7A or the 440 West during 440 West's bankruptcy although it is allegedly sub-letting units.

.

**Shareholder Disputes**

26.     In or around August, 2014, Inna Khiterer, acting on her own behalf or by power of attorney or as contract vendee on behalf of certain other shareholders (Sergei Leontev, Andrea Kroll, Lothar Kroll, and Mitchell St. Clair) allegedly entered into a transaction or series of transactions with respect to the conditional sale of shares relating to five of the units (Units 1, 31, 32, 42 and 44) at the Property to FIA, an entity controlled by Mark Schwartz, who signed the 440 West bankruptcy petition as officer.  Khiterer alleged the conditions to the effectiveness of transfers of shares to FIA were never satisfied.

27.     By complaint dated December 17, 2014, Inna Khiterer and certain others, individually and derivatively as alleged shareholders of the 440 West, brought an action against 440 West, the Debtor (i.e., FIA), SAC and the City in the Supreme Court of the State of New York, County of New York, in an action captioned <u>Luther Kroll, Inna Khiterer, et al vs. 440 West 164th Street HDFC, FIA 164th St Holdings LLC</u>, et al, Index No 653885/14 (the "State Court Action").  The State Court Action was discontinued as to the City.  The State Court Action sought to, among other things, rescind the alleged contracts to sell shares to FIA, compel FIA to pay the amounts owed, and declare the election of Schwartz to the board a nullity, since the elections were improper under the by-laws of the corporation.  The State Court Action alleged that certain conditions precedent to sale to FIA were not met, among them payment of the taxes to prevent foreclosure transfer and removal of the 7A Administrator.

**The 440 West Bankruptcy Filing**

28.     On March 31, 2015 440 West filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York.

9

29. Khiterer started adversary proceedings (the "Adversary Proceedings" see Adversary proceedings Number 15-08276 and 15-08277, part of which was remanded to state court) against FIA, SAC et al seeking to rescind the sale of shares in 440 West to the Debtor alleging, inter alia, as in the State Court Action, that the election of Schwartz to the board of 440 West was a nullity and void *ab initio*. Plaintiff's counsel filed a statement in the Adversary proceedings that the Adversary Proceedings would be rendered moot if the part of the City's motion seeking dismissal of the 440 West (discussed below) case is granted. The hearing on the dismissal part of the motion is scheduled for December 8, 2016.

30. By motion dated June 8, 2015 the City moved for dismissal or stay relief in the 440 West bankruptcy case, which motion was adjourned from time to time. The City's motion argued, inter alia, that the redemption period had expired, and that Schwartz, who had signed the petition as an officer, could not be an officer under the corporations by-laws since he was not an owner of shares personally (even if the Debtor, FIA, did own shares). The mandatory redemption period during which 440 West had a right to redeem the Property under 11-412.1(d) of the Admin. Code expired on April 2, 2015, four months after the date of entry of the Foreclosure Judgment. Under §108(b) of the Bankruptcy Code and case law, at best, 440 West's right to redeem the property from the Foreclosure Judgment expired on June 1, 2015.

31. At a hearing held on July 15, 2016, the Court issued a decision that the City was entitled to stay relief under 362(d)(1) and (2) because, among other reasons, the redemption period had expired and 440 West only held a possessory interest at best. The Stay Relief Order was entered on August 1, 2016.

32. After the Stay Relief Order was entered the City and NR prepared for transitioning of ownership, and of management responsibilities from the 7A administrator, to NR, and on October 14, 2016, the City closed on transfer of title of the Property to NR.

33. On Sunday, October 16, 2016, after transfer of title to NR, Debtor's counsel forwarded an e-mail to the undersigned's office e-mail with a link to the section 341 meeting notice in the Debtor's bankruptcy case, after the closing of transfer of title. The Debtor had filed bankruptcy on October 13, 2016.

## III. ARGUMENT

### The Automatic Stay does Not Apply to Stay the Transfer of Title, or Should be Annulled Retroactively

34. The City submits that the filing of the Debtor's case did not stay the transfer of title of the Property, which was owned by 440 West. The Debtor is a shareholder, allegedly of 440 West, it did not own the Property. The City does not assert any in personam claim against 440 West or against the Debtor for any deficiency. The foreclosure is an in rem tax foreclosure. It has been held that "the property interest of the debtor's bankruptcy estate extends only to intangible property rights represented by the stock certificate" and thus property of a business entity in which a debtor owns shares is not property of the estate and is not protected by the automatic stay in the shareholder's bankruptcy. People Bancshares, Ltd. V. Dep't of Banking (In re People's Bancshare, Ltd.), 68 BR 536, 539 (Bankr. N.D. Iowa 1986). See Also Donaram v. Furlong (In re Furlong), 660 F3d 81, 89 n. 9 (1st Circ 2011)(calling it "well-settled" that the automatic stay does not extend to the "assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock." In re Furlong 437 B.R. 712 (Bankr. D. Mass 2010). A debtor cannot invoke the automatic stay to prevent actions against a non-debtor subsidiary even when wholly owned by the debtor and even when it would

negatively impact the value of the debtor's stock in the non-debtor. In re Winer 158 BR 736, 743 (ND Ill 1993), In re Funding System Railcar 34 BR 706, 709 (ND Ill 1983); In re Beck Industries, Inc. 479 F.2d 410, 416 (2nd Cir 1973); In re Clifford Resources, Inc. 24 BR 778, 780 (Bankr SDNY 1983).

35.    Even if the automatic stay did apply, the City submits the Court should retroactively annul the stay to permit the transfer of title, *nunc pro tunc*. The stay can be retroactively annulled to permit even acts which on their face may have technically violated the stay. In re Jean-Francois, 516 BR 699 (EDNY 2014). In re Cinole, Inc. 339 BR 40 (Bankr. WDNY 2006); In re Pomerance 2011 Bankr. LEXIS 1388 (Bankr SDNY 2011). The Jean-Francois court looked to 7 factors in In re Stockwell, 262 BR 275, 281 (Bankr. D. Vt. 2001) to determine if retroactive relief is warranted, but not every Stockwell factor need be met for the court to annul the stay. Jean Francois, *supra* at 706. The City clearly did not have notice of the Debtor's bankruptcy filing when the transfer closed. Most importantly a motion for relief from stay would have been granted. This court had already ruled in the 440 West case that the redemption period had expired and therefore 440 West had a mere possessory interest at best, and on that basis granted stay relief. The City shouldn't be put to the expense of having to undoing the transfer, which terminated the 7A administrator, who would be reinstated, only to seek to vacate the stay again and close again.

36.    Any argument by the Debtor that the redemption period had not expired would be in bad faith. Its principal was the alleged officer of 440 West who signed its petition. Neither the Debtor nor 440 West appealed the Stay Relief Order or sought re-argument. Even if the Debtor's filing invoked the stay the grounds for stay relief would be the same.

37. For all of the foregoing reasons, the City requests that the Court enter an order that the stay does not apply to the City's transfer of title to the Property pursuant to its Foreclosure Judgment, or retroactively annul the stay as of October 13, 2016 to validate the transfer of title to the Property.

Dated:   New York, New York
         November 4, 2016

                                    ZACHARY CARTER
                                    100 Church Street, Room 5-233
                                    New York, New York 10007
                            By:     /s/ Hugh Shull          _____
                                    Hugh H. Shull III (HS-0236)
                                    Assistant Corporation Counsel